***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Glenn, with modifications.
 *********** RULING ON MOTION TO STRIKE PLAINTIFF'S ORAL ARGUMENT
The defendants have moved to strike the oral argument of the plaintiff's counsel before the Full Commission for his failure to timely file a Form 44 and brief pursuant to Industrial Commission Rule 701. The plaintiff's counsel represented at the hearing before the Full Commission that his Form 44 and brief were indeed late because of his overwhelming caseload as a sole practitioner. The Full Commission notes that all attorneys, whether they are sole practitioners or members of the largest firms in this State, are held equally to the same rules, standards, and professional codes. Upon review of the defendants' motion, the Full Commission, in its discretion, finds there to be good ground to strike the oral argument of the plaintiff's counsel before the Full Commission. Thus, defendants' motion to strike the oral argument of the plaintiff's counsel before the Full Commission for his failure to timely file a Form 44 and brief pursuant to Industrial Commission Rule 701 is hereby GRANTED. The Full Commission's review of the plaintiff's appeal, as contained herein, is based upon the merits of the case and is without regard to the oral argument made by the plaintiff's counsel to the Full Commission.
 *********** The Full Commission finds as fact and concludes as matters of law thefollowing, which were entered by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At all time relevant to this matter, an Employer-Employee relationship existed between the plaintiff and the defendant-employer, and the defendant-employer was insured for workers' compensation benefits.
3. The defendant-employer was insured for workers' compensation by RSKCO at all times herein.
4. The plaintiff's average weekly wages at the time of the alleged incident will be determined from a Form 22 to be submitted by the defendants.
5. The issues to be determined by the Commission are as follows:
 a) Whether the plaintiff sustained an injury by accident while in the course and scope of employment with the defendant-employer; and,
 b) If so, what, if any, benefits is the plaintiff entitled to receive under the North Carolina Workers' Compensation Act?
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACTS
1. The plaintiff was 52 years old as of the date of the hearing before the Deputy Commissioner. He graduated from high school; however, he is a functioning illiterate. The plaintiff worked on a farm most of his life. He stated that he can read and write a little, approximately at a third grade level. The plaintiff was able to pass the driver's license test.
2. The plaintiff first started working for defendant-employer in September 1977 and continued as a welder until January 2001. The plaintiff testified that he would work 40 hours plus overtime every week.
3. In August 1999, the plaintiff was working in the welding department when his supervisor, Richard, came to him and asked him to help in the shipping department.
4. Mr. Locklear testified that in August 1999 he was the supervisor in the shipping department. Mr. Locklear was able to recall when the plaintiff worked for him in the shipping department in August 1999; however, Mr. Locklear did not recall the plaintiff ever telling him that he hurt himself or that he wanted paperwork filled out to document an injury.
5. Mr. Meyer was the plant manager for defendant-employer from 1997 through October 1999. Mr. Meyer's last day of work was October 31, 1999, and as of that date, no report of the plaintiff's injury had been made to him by the plaintiff or Mr. Locklear. Mr. Meyer did not recall any injury to plaintiff that occurred while he was working in the shipping department in August 1999, even though he was able to recall in detail plaintiff being pulled from his regular job as a welder and being put in shipping.
6. The plaintiff did not stop working from the alleged date of injury in August 1999 until his mother died in February of 2000, because he was worried about his mother's health. The plaintiff stated that she was in the hospital and that he continued to work in the welding department, but did not get any better.
7. The plaintiff sought medical care in February 2000 at Laurinburg Urgent Care. The doctor told him that he needed to see a chiropractor, and the plaintiff sought treatment with chiropractor Dr. Armstrong. The plaintiff was then referred to Dr. Rice who obtained an MRI and referred plaintiff to Dr. Hucks-Follis.
8. Dr. Hucks-Follis sent the plaintiff for anther MRI and suggested surgery. Upon learning that he needed surgery, the plaintiff told Teresa in Human Resources that he needed to have the paperwork prepared to take short term disability. He eventually had a cervical fusion, yet he continued to work.
9. Dr. Hucks-Follis released plaintiff in August 2001. At that point, the plaintiff went to Duke for a second opinion. The doctor at Duke put him on pain medication. Since the date of surgery, the plaintiff testified that he has been unable to return to work. The plaintiff testified that Dr. Hucks-Follis told him that he was permanently and totally disabled and suggested that he not go back to work. The plaintiff testified that he did receive temporary disability under a Prudential policy.
10. The plaintiff did not file a Form 18 until July 24, 2001, and it was not until August 22, 2001, that the plaintiff reported the injury to anyone at work.
11. The plaintiff sought treatment with Dr. Carter on April 11, 2000. He presented with right thigh pain, right groin pain, and right knee pain. The plaintiff reported that he initially had back pain but that it had largely resolved.
12. The plaintiff was eventually referred to Dr. Rice on August 21, 2000. Dr. Rice examined the plaintiff for complaints of right leg numbness and weakness. Dr. Rice initially treated the plaintiff for sciatica; however, following the MRI of the lumbar spine, which only showed some broad based changes at the L4-5 level, Dr. Rice concluded that the plaintiff's significant problems of weakness and ataxic gait must be related to the thoracic or cervical spine, as the symptoms the plaintiff was experiencing did not fit with L4-5 stenosis. Dr. Rice examined the plaintiff after the cervical and thoracic scans were performed. The cervical scan showed significant stenosis and Dr. Rice was of the opinion that these findings would certainly account for his gait problems and the findings on his physical examination. Dr. Rice referred the plaintiff to Dr. Hucks-Follis for consideration for surgical intervention.
13. Dr. Hucks-Follis first saw the plaintiff on January 8, 2001. At that time, Dr. Hucks-Follis' main concern with regard to the plaintiff's condition was the evidence of spasticity and losing control of his bladder. Dr. Hucks-Follis testified that these symptoms were coming from compression of the spinal cord in his neck. Dr. Hucks-Follis testified that the plaintiff did relate that there was a history of an injury at work. Specifically, the plaintiff told his doctor that he had been hurt on the job but he had not reported it. The plaintiff did not give any further details about the alleged injury.
14. Dr. Hucks-Follis was asked to assume a certain factual scenario was true in order to render his opinion with regard to the cause of plaintiff's cervical cord compression and myelopathy. The plaintiff's counsel then read verbatim the facts that Deputy Commissioner Glenn found as true in an April 29, 2004, Interlocutory Opinion and Award. Specifically, Dr. Hucks-Follis was asked to assume that the plaintiff had received cervical fusion and had not returned to work since. Further, Dr. Hucks-Follis was asked, assuming that the scenario was true, the likelihood that the exertion of moving and loading boxes weighing between 70 and 150 pounds aggravated plaintiff's cervical spine. Dr. Hucks-Follis responded:
 It's a difficult question to answer because his complaints were not of his neck but of his lower back. We know he has a lower back disc and we know he was complaining of knee pain, which would be typical of lower back problems and lifting is certainly much more of a stress on the lower back than it is on the neck. So, given that, I'd say it is certainly quite likely that he aggravated his lower back and his lumbar disc that has been demonstrated. There is nothing in the description that states he had the onset of symptoms related to his neck and so it is very difficult to say that that has any relationship between the two given the facts as stated there.
15. Dr. Hucks-Follis was asked how the cervical myelopathy could be related to the alleged work injury. Dr. Hucks-Follis testified that the only way one could relate it to a work injury was if the plaintiff had a sudden onset of cord compression, such as a ruptured disc on the job. Dr. Hucks-Follis testified that the plaintiff should have had symptoms immediately and that he thought it would be unlikely that the plaintiff would have been able to continue to work full time, full duty for another six months, without seeking any medical care, if he had injured himself at work in August 1999 in the manner the plaintiff suggested.
16. Dr. Hucks-Follis was of the opinion that the plaintiff is permanently and totally disabled, but stated that such disability is not related to the injury that plaintiff sustained, but is rather related to other problems that the plaintiff developed over the years.
17. The plaintiff's cervical condition has indeed kept him from working. However, the expert medical testimony disproved any causal connection between his cervical condition and his employment. Therefore, any disability, or incapacity to earn, that is related to the cervical condition is also not causally connected to the plaintiff's employment.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSION OF LAW
The greater weight of the competent evidence of record shows that the cervical disc disease with myelopathy, and any alleged disability resulting therefrom, was not the result of a compensable work injury. Thus, the plaintiff has failed to prove that he is disabled as a result of a compensable injury by accident. N.C. Gen. Stat. § 97-2(6).
 ***********
Based upon the foregoing findings of fact and conclusion of law, the Full Commission enters the following:
 AWARD
1. The plaintiff's claim for compensation under the Workers' Compensation Act must be, and is hereby, DENIED.
2. Each side shall bear its own costs.
This 10th day of November 2005.
 S/_________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_________________ THOMAS J. BOLCH COMMISSIONER
 S/_________________ PAMELA T. YOUNG COMMISSIONER